## UNITED STATES v. MINE HILL & SCHUYLKILL HAVEN R. CO.

### Civ. A. No. 7964.

United States District Court
E. D. Pennsylvania.

Aug. 5, 1949.

Theron Lamar Caudle, Assistant Attorney General, Andrew D. Sharpe, Paul S. McMahon, Special Assistants to the Attorney General, Gerald A. Gleeson, United States Attorney, Thomas J. Curtin, Assistant United States Attorney, Philadelphia, Pa., for plaintiff.

Mac Coy, Brittain, Evans & Lewis, Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

The defendant was organized to operate a railroad. Whatever it has done since 1894, when it leased all its property to the Reading, it has not operated the road, nor do I understand the plaintiff to argue that it has. The plaintiff's position is based on the proposition that a corporation may be "doing business" within the meaning of the Statute even though not engaged in the particular business contemplated by its charter, Phillips v. International Salt Co., D. C., 3 F.2d 678, 681, affirmed 274 U.S. 718, 47 S.Ct. 589, 71 L.Ed. 1323, or fulfilling the purpose of its creation. Magruder v. Washington, B. & A. Realty Corp., 316 U.S. 69, 73, 62 S.Ct. 922, 86 L.Ed. 1278. This may be so. Although the courts have been quite insistent that doing what the corporation was organized to do is a strongly determinative factor, I do not think that a corporation actively in business would be exempt because the nature of its business had been so changed that it no longer bore any relation to the purpose of the charter.

Of course, if receiving rent under a lease, seeing to it that the lessee lived up to its obligations and keeping itself prepared to take over the property in case of default were "doing business", this defendant would be doing business. But the Supreme Court in McCoach v. Minehill & S. H. Railroad Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842, after stating that the precise question was whether the company was "doing business" or had gone out of business, 228 U.S. page 303, 33 S.Ct. 422, held that the latter was the case; and the Court decided that maintaining its corporate organization and engaging in certain activities for the sole purpose of safeguarding its interests as a lessor did not put it in business again. In the present case about the only kind of activity during the taxable period not before the Supreme Court in the Minehill case was the defendant's assent to and participation in proceedings for the abandonment of one or two spurs which had become a detriment because of the depletion of the mines they served. It may be that the lessee could have abandoned the property without any participation by the defendant, but even if the proceeding had been the independent act of the defendant, which it was not, I do not see how successive abandonments of different pieces of track can be called operating a railroad. It seems more like steps in the process of going out of business than anything else, although, of course, there was not enough of it to reach that stage.

Of course a lessor may be obligated by the lease to participate in the lessee's business operations and if it actually does so it will be doing business. Or, as the Supreme Court pointed out in the Minehill case, supra, [228 U.S. 295, 33 S.Ct. 423], this lessor, without actually taking part in the lessee's business operations, might "exercise its power of eminent domain, or put in force any other special corporate power, in aid of the business of the lessee" with the same result. The question is not what the defendant might have done or have been required to do but what it did. This entire lease was before the Court in the Minehill case and the Court there decided that entering into it and assuming its obligations did not keep the lessor in business, even though the lessor might sometime be called upon to take steps which would be "doing business."

Sales and purchases of securities in the contingent fund was also considered by the Supreme Court in the Minehill case, supra, and, in fact, constituted the main point of the dissenting opinion. Similar transactions were more fully considered by this Court in North Pennsylvania R. Co. v. Rothensies, D.C. 45 F.Supp. 486, affirmed 3 Cir., 134 F.2d 333. In the present case the contingent fund was set up by the defendant primarily for the protection of its interest as lessor in case of default and termination of the lease. Maintaining it for that purpose was not doing business, although in order to do so to the best advantage, securities were sometimes sold and substitutions made. Some of these transactions resulted in profit. No doubt a corporation, inactive commercially, may make use of its assets for speculation to such an extent that it will in effect be carry-

ing on a financial enterprise. This defendant's transactions in general were comparatively infrequent. The proper test is whether they were for the purpose of maintaining the fund or for the purpose of making use of it as an instrumentality for profit. I am satisfied that it was the former.

Judgment may be entered for the defendant.